**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AP
F.#2022R00974

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 19, 2025

By ECF

The Honorable Margo K. Brodie
Chief United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Junior Marmol Duran
Criminal Docket No. 23-243(MKB)

Dear Chief Judge Brodie:

The government respectfully submits this letter in anticipation of the defendant Junior Marmol Duran's sentencing in the above-captioned matter, which is scheduled for November 18, 2025. For the reasons set forth below, the government respectfully asks the Court to impose a sentence within the applicable United States Sentencing Guidelines (the "Guidelines") range of 125 to 135 months' imprisonment.

I. Background

A. Offense Conduct

On November 22, 2022, at approximately 1:30 a.m., the victim was approached near 80-49 Kent Street in Queens, New York by the defendant and several co-conspirators—members and associates of the Trinitarios street gang—who were driving a white Mercedes Benz (the "Mercedes") that some of them had stolen from a residence in Carteret, New Jersey two days earlier. See Presentence Investigation Report ("PSR") ¶ 1. The defendant and his co-conspirators chased the victim after jumping out of the Mercedes. One of them then tackled the victim to the ground as another pointed a firearm in his direction. Id. As the victim was held at gunpoint, another co-conspirator forcibly stole, among other things, the victim's cell phone, car keys, wallet, and two envelopes collectively containing approximately $13,935 in cash. Id. Some of the men fled in the victim's black BMW X5 (the "BMW") as the others, including the defendant, drove away in the Mercedes.

Following the robbery and carjacking, the victim was able to track his stolen cell phone using his wife's phone and reported the location of the stolen phone to responding police

officers. Id. The victim accompanied the officers in their marked police vehicle to look for the group of males and the stolen BMW. Id. During the canvass, the officers observed the BMW driving at a high rate of speed the wrong way on a one-way street of a residential block causing the officers to swerve to avoid crashing into the BMW. Id. ¶ 6. The officers continued their pursuit of the BMW for a short distance until they observed it collide with the Mercedes. Id. The collision caused the Mercedes to flip on its side next to a house.

After the collision (less than 10 minutes after the carjacking), one of the defendant's co-conspirators fled from the BMW but was apprehended a short distance away after a brief foot chase. Id. ¶ 7. Responding officers also found the defendant hiding underneath a truck a short distance from the collision. Id. Near him, police recovered a fanny pack containing the envelopes with the cash stolen from John Doe. Id. A third co-conspirator was also found unconscious on the ground near the collision. He was later transported to a local hospital for treatment to a fractured pelvis. Police also recovered additional items stolen from the victim in the BMW. Inside the Mercedes, police recovered a loaded 9mm ghost gun.[1] Id. at 8. The victim separately identified the defendants as having been involved in the carjacking. The photo below to the left shows the overturned Mercedes after the crash and the photo to the right depicts the victim's wrecked BMW.





The violent carjacking followed a spate of armed robberies, within a short time frame of the carjacking, in which victims of those crimes described the use of a car consistent with the Mercedes. Id. ¶ 9. Those victims reported that they were robbed of cash, winter jackets, and cell phones. Following the collision of the stolen cars, police recovered multiple cell

[1] The recovered firearm was later ballistically matched to two earlier shootings: a non-fatal shooting during the course of an attempted robbery on November 19, 2022 in Queens; and a fatal shooting during the course of an attempted carjacking, the following day, on November 20, 2022 in Queens.

phones and winter jackets from the wrecked Mercedes. Id.

B. Procedural History

On November 25, 2022, in connection with this carjacking, the defendant was charged by complaint with violations of Title 18, United States Code, Sections 2119 (carjacking) and 924(c) (brandishing a firearm in connection with a crime of violence). See 22-MJ-1255. On November 28, 2022, the defendant was arraigned and ordered detained. See 23-CR-243, Minute Entry, Nov. 28, 2022. The defendant has remained detained since his arrest.

On January 4, 2024, the defendant waived indictment and pled guilty, pursuant to a plea agreement, to an information (the "Information") charging him with violations of 18 U.S.C. §§ 2119 and 924(c) before the Honorable Sanket J. Bulsara. See Minute Entry, Jan. 4, 2024. Judge Bulsara recommended that this Court accept the defendant's guilty plea. On May 6, 2024, the Court entered an order accepting the defendant's plea. See ECF No. 53.

II. Applicable Law

The United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are advisory, not mandatory. United States v. Booker, 125 S. Ct. 738, 764-65 (2005). However, the Supreme Court held in Booker that the sentencing court must consider the Guidelines in formulating an appropriate sentence. Id. In Gall v. United States, 552 U.S. 38 (2007), the Supreme Court set forth the procedure for sentencing courts to follow in light of Booker:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.

Gall, 552 U.S. at 49 (citation omitted). Next, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [the district court] may not presume that the Guidelines range is reasonable. [The district court] must make an individualized assessment based on the facts presented." Id. at 49-50 (citation and footnote omitted). Those statutory factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed [] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant[,]" 18 U.S.C. § 3553(a)(2).

## III. Sentencing Guidelines Calculation

The United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") applicable to the defendant are correctly set forth in the PSR:

| | |
|---|---|
| Base Offense Level (§ 2B3.1(a)): | 20 |
| Plus: Offense Involved Carjacking (§ 2B3.1(b)(5)): | +2 |
| Plus: Reckless Endangerment During Flight (§ 3C1.2) | +2 |
| Less: Acceptance of Responsibility (§ 3E1.1(a) & (b)): | -3 |
| Total: | 21 |

PSR ¶¶ 16-31. The defendant is subject to a mandatory consecutive 84-month term of imprisonment on County Two of the Information. PSR ¶ 71. The adjusted offense level, with a criminal history category II, carries an effective Guidelines range of 125 to 135 months' imprisonment. As indicated in the plea agreement, executed by the parties on January 4, 2024, the parties concur and have stipulated to the same Guidelines calculation.

## IV. Discussion

The government respectfully requests that the Court impose a sentence within the applicable Guidelines range agreed upon by the parties in the plea agreement. As detailed herein, the defendant, along with his co-conspirators, committed a brazen carjacking and then endangered the safety of the public as they fled from that crime.

### A. The Nature and Circumstances of the Offense

The crime of conviction—armed carjacking—is extremely serious. First, the defendants used a Mercedes that had been stolen from a residence in New Jersey only two days earlier. Then, victims of armed robberies reported that they were robbed by perpetrators in a car consistent with the Mercedes within a short timeframe of the charged carjacking. All of this preceded the charged conduct in which the defendant and his co-conspirators attacked an innocent civilian on the residential streets of Queens and stole his car at gunpoint. In their haste to flee from the crime, they drove off at a high rate of speed only to collide into one another on another residential street a short distance away after police located them. Those actions not only deprived the victim of his property, but they also placed the public at large at risk of injury or even death. It is by sheer luck that no one was injured in this collision aside from the participants in the carjacking.

### B. The History and Characteristics of the Defendant

The government recognizes that the defendant faced a challenging childhood and does not have a significant criminal history, although he has received multiple significant

sanctions during his time in the MDC.[2] The defendant was also the victim of a violent assault in the MDC on August 27, 2024 in which he was stabbed by another inmate in the spine. The stabbing resulted in months of hospitalization and significant impairment of the defendant's health. The Court is entitled to weigh these circumstances against the defendant's violent conduct in determining an appropriate sentence.

C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law and Providing Just Punishment

A Guidelines sentence is also necessary to reflect the seriousness of the offenses of conviction, to promote respect for the law and to provide just punishment. See 18 U.S.C. § 3553(a)(2)(A). In light of all of the facts set forth herein, a Guidelines sentence would be appropriate.

D. Affording Deterrence and Protecting the Public

A Guidelines sentence is also necessary to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. See 18 U.S.C. § 3553(a)(2)(B) & (C). "Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." United States v. Davis, 08 CR 332 (JBW), 2010 WL 1221709, at *2 (E.D.N.Y. March 29, 2010). A Guidelines sentence will send a message to others that the law views these crimes as serious and to specifically deter the defendant from this violent conduct. In light of the defendant's commission of the crimes of conviction, a term of imprisonment within the Guidelines range of 125 to 135 months' imprisonment will protect the public.

[2] The defendant was sanctioned for disruptive conduct and fighting with another person on August 27, 2024, in connection with his stabbing incident, which led to the disallowance of good conduct time, disciplinary segregation and loss of commissary privileges. A month earlier, the defendant was sanctioned for refusing to obey an order on July 3, 2024, which led to a 45-day loss of visitation privileges. The defendant was sanctioned for possessing a hazardous tool on November 16, 2023, which resulted in 41 days loss of good conduct time; 30 days of disciplinary segregation; and one year loss of visitation privileges. PSR ¶ 48. The defendant was sanctioned for refusing to obey an order on April 18, 2023 and lost 15 days of MP3 player privileges. Id.

## V. Conclusion

For the foregoing reasons, the government respectfully submits that a Guidelines sentence of 125 months to 135 months' imprisonment is appropriate.

Respectfully submitted,

JOSPEH NOCELLA, JR.
United States Attorney

By: /s/ ____________________
Andrés Palacio
Assistant U.S. Attorney
(718) 254-6215

cc: Clerk of the Court (MKB) (by ECF)
Counsel of Record (by ECF)